Loux v. Loux.

REUBEN LOUX

v.

MARY E. LOUX.

[Decided October 17th, 1898.    Filed October 17th, 1898.]

1. Having been offended by members of her husband's family, the wife complained to him, and he refused to take her part to any extent. The next day she told him she was going back to her mother, and he told her to suit herself.—*Held*, insufficient to justify her in deserting her husband.

2. To entitle the complainant to a divorce for desertion, the burden is upon him to show, by a preponderance of the evidence, that the desertion was willful, and obstinately continued for a period of two years.

3. Being deserted without sufficient cause, the husband gave the wife two weeks' time to return and then withdrew the offer. Within two years the wife,

by several letters, offered to return, to some of which the husband made no reply, and to others he answered, refusing her offer. The wife testified that she went to see him and offered to return to him, and that he refused to receive her. The husband did not dispute her offer to return, but another witness testified to the wife's statement that she would not live with him.— *Held*, that a continuous, obstinate desertion for a period of two years had not been shown.

On bill, answer and proofs.

*Mr. Samuel M. Roberts*, for the complainant.

*Mr. James E. Hays*, for the defendant.

GREY, V. C.

This is a bill filed in March, 1898, by the complainant, for divorce against his wife upon the ground of desertion alleged to have taken place on March 13th, 1896. The parties were married in 1895, in Brooklyn, and did not immediately begin cohabitation, but after a week or so they associated together, and continued to live as husband and wife until the spring of 1896.

The circumstances of the alleged desertion took place in the house into which they had the day before moved, for their residence. The house being still in some confusion and dirty, some members of the complainant's family visiting it made comments upon its condition, and on the action of the defendant in laying down a carpet, and used a name which she thought opprobrious, and which gave her great offence.

She made complaint to her husband of the remark of the member of his family, and the husband did not take her part as energetically as she thought he should, and upon that she became offended at her husband. As I recall the testimony she occupied the same room with him that night, but the next morning she began preparations for leaving, without, so far as I can gather, any other provocation or cause than that stated. She says that she mentioned to her husband the fact that she intended to go to her mother in Brooklyn, and that in response to her statement that she had such a purpose, he said "suit your-

Loux v. Loux.

self." The husband, while not explicitly denying this statement, does say that he did not know that she intended to leave him. The wife that morning got together her personal belongings, tied them in bundles, and marked them for transportation to her mother's house in Brooklyn, New York.

The husband had before this gone out to his work, and early in the morning, between nine and ten o'clock, the wife having made her arrangements to go to Brooklyn, during that period departed for that place by railroad train. Before she left she wrote a letter to her husband, in which she stated that she had gone, and sent it to him, she says by mail. He says he found it in the house upon his return that night, and from his testimony I gather that his assertion is that this letter was the first information he had that his wife had gone.

At the time when the wife went away she was with child, which was born the following August (1896). The period when she left her husband was March 13th, 1896. Her husband was absent from the house at the time she left him. No person appears to have been present at the house at the time she left, unless possibly those whom she brought there to cart away the goods, although that was done, I believe, after the husband returned. She, herself, engaged a carter to cart the goods which she had labeled to be sent to her mother.

The testimony is undisputed that the wife, upon the provocation which she had received from some members of his family of the character named, and because of the husband's refusal more cordially to resent it than he was willing to do, left the husband. In my view, this was a cause wholly insufficient to justify her in leaving her husband.

Up to this point there is no such substantial disagreement of the testimony of one side from the other, that there is any occasion to weigh it, or to inquire and ascertain which statements are more credible, but from this point on in the narration of the relation of these parties, there is a wide divergence of the statements. No witnesses for the complainant undertake in any way to define the character of the separation of the wife from the husband, except the testimony of a witness named Thompson,

Loux *v.* Loux.

who testifies to her declaration that she would not return to him. All the rest of the testimony which undertakes to define the character of the desertion and the separation, is the testimony of the husband himself. The wife testifies that she has been both willing and desirous to return and that she asked his leave to do so, and that he advised her to stay where she was, with her mother.

Mere separation, it has been held in these cases many times, is not desertion. In order to constitute desertion such as gives a right to the relief sought in this case, there must be a purpose existing in the mind of the defendant to desert her husband—not for a temporary separation, but a purpose to abandon him, stay away from him and not associate herself with him. That purpose must be willful—that is, it must not be forced upon her by any action on his part, but it must be the free action of her own mind and the result of her own wish. At the origin of the separation in this case when the wife first left the husband, there has been shown a purpose and willingness on her part to absent and separate herself from her husband. She put herself in the position of a wife who deserts her husband, for she left him of her own free will, without justifiable reason and with no indication of a purpose to return to him.

But the husband, in order to get the relief which he seeks in this court, must establish by the preponderance of the proof, not only that this desertion was willful at its beginning, but also that it was obstinate and continued during the period of two years. The burden is upon the husband who asks this relief to show this, and if the evidence is not sufficient to lead the court to that conclusion, he must fail of the relief which he seeks.

The testimony upon this point as to the relations between these parties during the period of separation is somewhat conflicting. The wife says, in the first place, that immediately upon the desertion she received a letter from the husband, in which he stated to her that the house would be kept open for her for one week. He says that he wrote such a letter, but in it he stated that the house would be open two weeks. There does not seem to be anything in the character of the letter, as described

even by him, which was of the kind to indicate to the wife when
she received it that if she returned her reception would be very
cordial.  Nevertheless, it was a notice to her that the home
which she had abandoned would be open to her for two weeks
on his statement.  The husband admits that he advertised that
he would not be responsible for any debts of the wife's contract-
ing, though there is no proof that she was in any way extrava-
gant, or that she sought, by incurring debts even for necessaries,
to charge him with her maintenance.  The wife and her mother
(who says she knows the handwriting of the complainant) both
agree that another letter was received shortly after the first, in
which it was stated that the home had been broken up, and that
the household goods had either been removed or disposed of
otherwise.

Various letters were written between these parties.  Both par-
ties showed that these letters have either been lost or destroyed
before the controversy in this case arose, and to my satisfaction,
without any indication that they were destroyed with any pur-
pose of suppressing them as evidence which might be used in
this case, and for this reason secondary proof has been allowed
of the contents of those letters.

The wife and the mother both testify that a number of letters
were written by the wife to her husband, to which no replies
were made.  So many as ten letters have been mentioned as
having been written without drawing from him any reply.

These letters were described as having contained offers on the
part of the wife to return to the husband, and asking him to
take her back.  The husband does not state with precision what
these letters which he received, contained.  He does not under-
take to prove what they contained.  He does not explain why
it was that he made no reply to his wife's letters, and the court
is left, therefore, in ignorance as to what effect the wife's letters
produced on his mind, save only that it may be inferred as he
made no answer to a very large number of them that he did not
desire her to return to him.

It must be borne in mind that it is necessary to show that the
wife's absence was willful, continuous and obstinate during the

whole period of two years. If during the period she manifested to him a disposition to resume their relations and put herself in such position that he ought to have undertaken with her the duties of husband and wife, then her desertion ceased to be obstinate and continuous, and if during that period, be it ever so short, if it were only one day, she came to him and showed him that she desired to resume the relations of a wife, the continuity of the period of desertion, which is absolutely essential, fails and consequently the relief which the husband seeks, which is dependent upon that continuity, also fails.

The wife testifies that she came to Camden to see the husband some six or seven weeks after the separation, for the purpose of trying to induce him to take her back, as she put it. She met him on the street, and during the interview she kissed him. This is not denied. She says that she asked him to take her back, and he told her that he would not take her back—that she was better off with her mother. The testimony of the mother as to the letters which were written by the husband to the wife, in Brooklyn, is that in these letters he advised her that she was better off to stay with her mother. That is not denied.

The wife also states that at some period after the first visit she came to Camden from Brooklyn for the purpose of compelling the husband to support her. At that time she saw him, but whether or not she made definite application to him to take her back I cannot gather with precision from the testimony, although the tendency of her own statement of the case is that at every interview where she personally met him, she asked him to take her back.

After that she brought a suit before a justice of the peace to compel her husband to support her. There was but one suit, and the hearing of that was postponed. At one of those hearings the wife attended before the justice of the peace, and while she was there Mr. Thompson, the clerk of the justice or recorder, says that she made a statement that she did not want to and would not live with her husband. The recorder brought here and examined says he did not hear the statement, but it is quite evident that it might have been made without his hearing it, as he was

not continuously with her during her presence there. It may be true that she so declared herself at that time, but if, in the conversations with her husband she asked him to take her back, and in her letters to him offered to return, all within the period of the two years of alleged desertion, it cannot be maintained that her desertion was obstinate and continued.

Shortly after the issuing of the warrant for support the child was born, and the hearing having been continued until October, 1896, the parties appeared and the husband assented to a judgment or order that he should pay $1.50 per week for the support of the child. He paid this money as ordered by the court.

The question to be determined is whether or not the husband has, by preponderance of the proof, made a case of willful, obstinate and continued desertion during two years. In the original separation the wife was at fault, but the testimony of both the wife and her mother shows that in various letters the husband afterwards advised her, though absent from him, to stay in the place where she was. The testimony of the wife is that she met the husband and sought to establish affectionate relations with him—kissed him and asked him to take her back. This evidence is substantially undisputed. It is impossible, under these circumstances, to believe that this wife was actuated by a willful and obstinate purpose to desert her husband, which continued during the period of two years.

There is a line of cases expounding the duty of a husband when the separation is the act of the wife and not justifiable. See *Cornish* v. *Cornish, 8 C. E. Gr. 209; Bowlby* v. *Bowlby, 10 C. E. Gr. 406; affirmed on appeal, 10 C. E. Gr. 570; Taylor* v. *Taylor, 1 Stew. Eq. 207; Driver* v. *Driver, 1 Stew. Eq. 393.* These decisions, especially that of *Bowlby* v. *Bowlby*—which was affirmed by the court of errors upon the grounds stated by the vice-chancellor—declared it to be the husband's duty in such cases to make such advances as a just man should in order to put an end to his wife's desertion. In this case there is no proof that the husband even met the advances of the wife. I do not consider the notice sent her that the house would be open for two weeks for her return to have been, either in substance

or in spirit, such an invitation as a just man should have sent to his wife who had foolishly and hastily left him, and the weight of the proof shows he afterwards withdrew even this offer.

In this case I have observed with pleasure that no suggestion has been made which is in any way derogatory to the moral character of the wife, nor has anything been asserted on the part of the wife which accuses the husband of ill treatment, or any lack of consideration for her, except that he did not, according to her view, support her with the energy that she thought she was entitled to receive from him, in opposition to what she thought was the obtrusive interference of his family.

I would be very glad if I could say anything to aid in bringing these young people to a willingness to resume their marital relations. I can see no reason for their continued separation. Their own future and that of their child certainly ought to lead them to live together. The function of the court must of course end in passing upon the testimony offered in support of the issues which are here raised.

As the bill must be dismissed, there is no occasion to consider the custody of the child. If the parties should resume their marital relations, the question of the maintenance and custody of the child will adjust itself. If they do not, then if no amicable agreement be arranged, a new application to provide for the child may be made.

I will advise a decree dismissing the bill, with costs. No counsel fee having been heretofore allowed the solicitor of the defendant wife, an order will be advised for a reasonable fee.